```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ETHEL KAMARA                    :     CIVIL ACTION
                                :
          v.                    :
                                :
COLUMBIA HOME LOANS, LLC,       :
d/b/a BROKERS FUNDING           :
SERVICES CO., et al.            :     NO. 08-5998
```

MEMORANDUM

McLaughlin, J.                                          July 24, 2009

   This action arises out of the grant of a purchase money mortgage loan by Columbia Home Loans, LLC ("Columbia") to the plaintiff on December 6, 2006.  The plaintiff alleges that the defendants induced her to obtain the loan by making false promises, and that the terms of the loan as revealed at the loan closing were different from those promised.  The defendants are Columbia, OceanFirst Financial Corporation ("OceanFirst"), Fidelity Borrowing, LLC ("Fidelity"), Mortgage Electronic Registration Systems, Inc. ("MERS"), EMC Mortgage Corporation ("EMC"), and Bank of America, National Association ("Bank of America").

   The complaint was filed on December 24, 2008.  On March 10, 2009, the plaintiff filed an amended complaint.  The amended complaint alleges violations of the following statutes:  (1) the Federal Truth in Lending Act ("TILA"), as amended by the Home Ownership and Equity Protection Act ("HOEPA") (Count I); (2) the

Federal Real Estate Settlement Procedures Act ("RESPA") (Count II); (3) the Federal Credit Services Act (Count III); (4) the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count IV); (5) the Federal Fair Debt Collection Practices Act ("FDCPA") (Count V); (6) the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") (Count VI); and (7) the Federal Equal Credit Opportunity Act ("ECOA") (Count VII). Columbia, OceanFirst, MERS, EMC, and Bank of America have moved to dismiss all claims against them.[1]  For the reasons stated herein, the Court will grant their motions.

I.   Facts as Alleged in the Amended Complaint

In 2006, the plaintiff sought to purchase a home.  To finance the purchase, she needed to obtain a loan.  To facilitate obtaining a loan, she went to Fidelity.  At Fidelity, the plaintiff dealt with an individual named "Michael."  Michael promised the plaintiff that he could secure a loan for her with better rates than she would be able to find on her own.  He explained that there was a mortgage program for which she had been pre-approved.  Through this program, the plaintiff could obtain a loan with an 8% fixed interest rate with monthly

---

[1] Count I is alleged against all defendants except Fidelity. Counts II and IV are alleged against all defendants.  Count III is alleged against Fidelity only.  Counts V and VI are alleged against MERS, EMC, and Bank of America.  Count VII is brought against Columbia and OceanFirst.

payments of $750 for a loan of $120,000.  She was also promised 100% financing with no pre-payment penalty.  Am. Compl. ¶¶ 25-31.

The loan closing took place on December 6, 2006.  At the closing, the plaintiff discovered that the terms of the loan being offered to her by Columbia were not what Fidelity had promised.  Instead, the terms included 85% financing, monthly payments of $952, a 10% interest rate, and other allegedly unfavorable terms.  She also alleges that the loan involved an undisclosed "yield spread premium."  The plaintiff called Fidelity to complain, as she could not afford these terms.  Id. ¶¶ 25, 39-41, 60-62.

The plaintiff alleges that Fidelity induced her to sign the loan documents by promising her that it would assist her to obtain refinancing at better terms after the closing.  Based on these representations, the plaintiff signed the loan documents at the closing on December 6, 2006.  Id. ¶¶ 44-45.

Approximately one month after the closing, the plaintiff called Fidelity to inquire about the status of her refinancing.  At that time, she was told that it was too early to refinance and that she would have to wait until at least six months after the closing to refinance.  Six months after the closing, she again called Fidelity.  According to the plaintiff, Fidelity did not respond to her repeated calls and messages.

Ultimately, to save her home, the plaintiff filed for bankruptcy. Id. ¶¶ 46-49, 56.[2]

II. Analysis

As a preliminary matter, the plaintiff concedes that she is withdrawing all claims against OceanFirst. She also concedes withdrawal of her claim under RESPA, insofar as it pertains to a "qualified written request" ("QWR"), and of her claim under HOEPA. See Pl.'s Opp. 5. Those claims are therefore dismissed.

The defendants, with the exception of Fidelity, move to dismiss the remainder of the claims against them for failure to comply with the applicable statutes of limitations and/or failure to state a claim. The Court agrees and will dismiss all claims against the moving defendants.

A. Federal Pleading Standard

The current standard for adequately pleading a claim was set out in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Under Twombly, to state a claim, a party's factual allegations must raise a right to relief above the speculative

---

[2] MERS is alleged to have been Columbia's "nominee." Bank of America is alleged to be the successor in interest to the plaintiff's trustee in bankruptcy. According to the plaintiff, she was informed during the course of the bankruptcy proceedings that EMC was the holder of her mortgage.

level.  Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 555).  The Supreme Court recently reaffirmed and clarified the Twombly standard in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  The Iqbal Court explained that although a plaintiff is not required to make "detailed factual allegations," Federal Rule 8 demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 1949.

To survive a motion to dismiss, a party cannot allege "labels and conclusions."  Twombly, 550 U.S. at 555.  Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face."  Iqbal, 1927 S. Ct. at 1949.  A claim has facial plausibility when the plaintiff pleads sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Id.

The Supreme Court has explained that "two working principles" underlie a motion to dismiss inquiry.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice. Id. at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not "shown," that the pleader is entitled to relief within the meaning of Rule 8(a)(2).

    B.    Count I - TILA

In Count I of the amended complaint, the plaintiff alleges that "Defendants" failed to deliver all material disclosures required by the TILA. Accordingly, she asks that the Court award her damages and that it grant rescission of the loan at issue. The defendants argue, among other things, that the plaintiff's claim for damages is time-barred, and that rescission is not available for the loan at issue.

    1.    Damages

An action for damages under the TILA must be commenced within one year of the occurrence of the violation. 15 U.S.C. § 1640(e); Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 903

(3d Cir. 1990).  The TILA requires that disclosures be made before "credit is extended" to the consumer.  See 15 U.S.C. § 1638(b)(1).  In other words, and as explained by the relevant regulation, the required disclosures must be made "before consummation of the transaction."  12 C.F.R. § 226.17(b).  A transaction is "consummated" when "the consumer becomes contractually obligated on a credit transaction."  12 C.F.R. § 226.2(a)(13); see also, e.g., Bartholomew v. Northampton Nat'l Bank, 584 F.2d 1288, 1296 (3d Cir. 1978); Wenglicki v. Tribeca Lending Corp., No. 07-4522, slip op. at 8 (E.D. Pa. July 22, 2009); Roche v. Sparkle City Realty, No. 08-2518, 2009 WL 1674417, at *2 (E.D. Pa. June 12, 2009).  Here, the plaintiff signed the loan at issue on December 6, 2006.  She filed her complaint over two years later, on December 24, 2008.  Her claim for damages under the TILA is therefore time-barred.

      The plaintiff concedes that her claim for damages is governed by a one-year statute of limitations.  See Pl.'s Rebuttal Br. 3.  She attempts to save her claim, however, by attempting to characterize it as one for "recoupment," which, according to the plaintiff, "has no statute of limitations."  Id. at 4.  As the United States Court of Appeals for the Third Circuit has explained, recoupment is a defensive claim which can only be asserted in response to an independent action instituted by another party.  Recoupment does not permit the party asserting

it "to present otherwise time-barred claims simply by creative pleading in an independent proceeding brought by it." Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178, 184 (3d Cir. 1997); see also In re Flagstaff Realty Assocs., 60 F.3d 1031, 1035 (3d Cir. 1995) (stating that recoupment "cannot be the basis for asserting an independent claim"); Roche, 2009 WL 1674417, at *2.

The plaintiff's TILA claim for damages is time-barred. Her assertion that the claim is one for recoupment does not change this conclusion. This claim is dismissed.

### 2. Rescission

The amended complaint also seeks rescission of the subject loan based on the defendants' alleged TILA violations. The plaintiff states, however, that "TILA rescission is admittedly inapplicable." See Pl.'s Rebuttal Br. 7.

Although this admission alone is sufficient to dismiss her claim, the Court also notes that under 15 U.S.C. § 1635, rescission is not an available remedy for "residential mortgage transactions," as defined in 15 U.S.C. § 1602(w). Under that section, a "residential mortgage transaction" is defined as a transaction in which a mortgage or security interest is "created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." Here, it

is undisputed that the loan was obtained to finance the acquisition of the plaintiff's dwelling. Rescission therefore is not available for the loan at issue. This claim is dismissed.

    C.    Count II - RESPA

The complaint alleges that "Defendants" violated RESPA in three ways: (1) by failing to respond to the plaintiff's QWR; (2) by engaging in "fee splitting"; and (3) by providing "Good Faith Estimates" to the plaintiff that were untimely and inaccurate.[3]

Under 12 U.S.C. § 2607, no person may give or accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed. In addition, no person may give or accept any fee, kickback, or thing of value pursuant to any agreement that business incident

---

[3] The plaintiff has withdrawn her claim related to the QWR. As to the plaintiff's allegations relating to the defendants' "Good Faith Estimates," this claim is governed by 12 U.S.C. § 2604. That statute, however, does not create a private right of action. To the contrary, Congress specifically repealed the portion of the TILA that had initially created a private right of action for failure to comply with RESPA's good faith estimate provisions. See Collins v. FMHA-USDA, 105 F.3d 1366, 1368 (11th Cir. 1997); Brophy v. Chase Manhattan Mortgage Co., 947 F. Supp. 879, 881-83 (E.D. Pa. 1996). Accordingly, the Court need only consider whether the plaintiff has stated a claim for fee-splitting under RESPA.

to or a part of a real estate settlement service shall be referred to any person. See 12 U.S.C. § 2607(a)-(b).

Under 12 U.S.C. § 2614, any action brought pursuant to § 2607 must be brought within one year from the date of the occurrence of the violation. The plaintiff does not dispute this point. Instead, she argues that recoupment applies. As the Court has explained, however, recoupment does not save her affirmative claims from being time-barred.

The Court agrees with the defendants that the statute of limitations in this case began to run on the date of the closing, December 6, 2006. See Snow v. First Am. Title Ins. Co., 332 F.3d 356, 358-60 (5th Cir. 2003); see also Boles v. Merscorp, Inc., No. 08-1989, 2009 WL 734133, at *6 (C.D. Cal. Mar. 18, 2009). The plaintiff did not bring her claim within one year of that date. Her RESPA claim, accordingly, is dismissed.

    D.    Count IV - UTPCPL

The UTPCPL provides consumers with a remedy against sellers of goods or services when those sellers commit an unfair or deceptive practice. See 73 Pa. Cons. Stat. Ann. § 201-3. The statute sets forth a variety of specific conduct constituting "unfair or deceptive acts or practices." See id. § 201-2(4). In addition to prohibiting certain specific acts, the statute also provides a catch-all provision prohibiting persons from

"[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Id. § 201-2(4)(xxi).

The plaintiff alleges eleven violations of the UTPCPL. See Am. Compl. ¶ 92. Each of these alleged violations, however, is either a wholesale copy of a provision of the UTPCPL or a conclusory allegation that is insufficient to survive the federal pleading standards set forth in Twombly and Iqbal. These allegations are not supported by sufficient factual content as to any of the moving defendants. The plaintiff does not distinguish among these defendants in setting forth the alleged violations. The complaint is devoid of representations made by Columbia, MERS, EMC, or Bank of America or any specific actions taken by them that would cause any likelihood of confusion.

As to whether the plaintiff might be eligible for relief under the UTPCPL's catch-all provision, the defendants argue that the catch-all provision requires a plaintiff to plead with specificity the elements of common law fraud. The plaintiff, on the other hand, suggests that the catch-all provision does not require the heightened specificity applied to fraud claims where the acts allege are merely "deceptive." See Hunt v. U.S. Tobacco Co., 538 F.3d 217, 225 (3d Cir. 2008) (noting that "some authority" supports the proposition that a plaintiff alleging deception, as opposed to fraud, under the

-11-

UTPCPL catch-all provision need not prove all elements of common law fraud).

Even if heightened particularity is not required for "deceptive" conduct, the Court still concludes that the amended complaint does not contain sufficient factual content to show that any of the moving defendants engaged in such conduct. Count IV is therefore dismissed.

E. Counts V and VI - FDCPA/FCEUA

The defendants argue that the plaintiff fails to state a claim under the Federal FDCPA and the Pennsylvania FCEUA. The Court agrees. The plaintiff does not adequately allege facts to show that any of the moving defendants employed any unfair, unconscionable, or deceptive practices with regard to the collection of a debt, as required to establish violations of the FDCPA or the FCEUA. See 15 U.S.C. § 1692f; 73 Pa. Cons. Stat. Ann. § 2270.2; see also Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000); Kemezis v. Matthew, No. 07-5086, 2008 WL 2468377, at *7 (E.D. Pa. June 16, 2008).

The plaintiff alleges that MERS, EMC, and Bank of America engaged in an "assignment scheme" in order to create confusion and to evade various legal obligations. She states that the defendants violated the FDCPA by creating "a false impression of the character or legal status of the debt,"

"unlawfully charging post-acceleration late charges," "requesting post-judgment interest in excess of the legal rate," and "charging plaintiffs (there Foreclosure defendants) [sic] charges that were not incurred or should not have been incurred." Am Compl. ¶¶ 109, 111.[4]  She also alleges that MERS, EMC, and Bank of America violated the FCEUA by "using unfair and unconscionable collection methods," "giving a false impression of the character, amount or legal status of the alleged debt," "using false and deceptive collection methods," or "[o]therwise using false deceptive, misleading, and unfair and unconscionable means to collect or attempt to collect a debt." Id. ¶ 116.

These allegations are not supported by sufficient facts to withstand 12(b)(6) inquiry.  The plaintiff does not describe in any detail what, if any, actual collection activities any of the defendants have undertaken.  She does not identify a single communication between any of these defendants and the plaintiff, much less one that constituted an attempt to collect a debt.  The complaint contains no allegations regarding specific collection methods used by these defendants, threats made by them, or illegal action taken by them.  Nor does it allege that any collection or foreclosure action has been commenced by any of these defendants.  In addition, with respect to MERS in

---

[4] Despite this statement, the plaintiff does not allege that any foreclosure action was commenced against her.

particular, the plaintiff does not state any actions whatsoever, other than that it allegedly engaged in an unspecified "assignment scheme." The plaintiff has not shown that her FDCPA and FCEUA claims go beyond mere "the-defendant-unlawfully-harmed-me" accusations. See Iqbal, 129 S. Ct. at 1949. She thus fails to state a claim for violation of these statutes.

### F. Count VII - ECOA

The ECOA is a federal statute that prohibits discrimination on the basis of certain protected characteristics with respect to credit transactions. Under 15 U.S.C. § 1691, any creditor who takes "adverse action" on an application is required to provide a written statement of the reasons. An "adverse action" is defined as "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered." 12 C.F.R. § 202.2(c)(1)(i).

The plaintiff here has not identified an adverse action within the meaning of the ECOA. Columbia - the only party against whom this count is alleged[5] - did not refuse to grant the

---

[5] Although this claim was also alleged against OceanFirst, the plaintiff has withdrawn all claims against OceanFirst.

plaintiff credit.  Even to the extent that the terms of the loan ultimately offered by Columbia may not have been "on substantially the terms" alleged to have been promised by Fidelity, the plaintiff also alleges that Columbia did nonetheless offer to extend credit to her, and the plaintiff did accept the credit offered.  Accordingly, the complaint establishes that Columbia did not take any adverse action, and the plaintiff's ECOA claim is dismissed.

An appropriate Order shall issue separately.